UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **ANGELA CRAIG**, and<br>**JENNY WINSLOW DAVIES**,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>**STEVE SIMON**, in his official capacity<br>as Minnesota Secretary of State,<br><br>　　　　　　　Defendant. | Civil No. _____<br><br>**COMPLAINT FOR DECLARATORY**<br>**AND INJUNCTIVE RELIEF** |

## NATURE OF THE ACTION

1.　　This case involves Defendant Minnesota Secretary of State Steve Simon's (the "Secretary") announcement that, due to the recent death of the Legal Marijuana Now Party's ("LMNP") candidate for Minnesota's 2nd Congressional District, voters in that District will not be able to select a representative in the coming general election. *See* Press Release, Secretary Simon Releases Statement on Death of CD2 Candidate (Sept. 24, 2020), https://www.sos.state.mn.us/about-the-office/news-room/secretary-simon-releases-statement-on-death-of-cd2-candidate/. This is the result of the Secretary's enforcement of a Minnesota law that postpones the date of an election for public office in Minnesota if a major political party candidate nominated to run in a coming election dies after the 79th day before the election. Minn. Stat. § 204B.13 (the "Postponement Provisions" or "Provisions"). These Provisions are unconstitutional as applied to elections for U.S. Congress and preempted by federal law; emergency judicial relief is accordingly necessary.

2. The LMNP candidate passed away last week. On September 24th, the Secretary announced that, although all of the candidates will remain on the ballot and voters should continue voting, by operation of the Postponement Provisions, the votes that voters cast for the 2nd Congressional District race (indeed, are already casting and have been casting since early voting began on September 18th) will not be counted, and the seat will remain vacant until a special election that the Governor is required to call for the "second Tuesday in February of the year following the year the vacancy in nomination occurred." *Id.* § 204B.13(7). This will leave Minnesota voters in the 2nd Congressional District unrepresented in the new Congress until at least that time.

3. The Postponement Provisions are unconstitutional as applied to federal elections for the U.S. House of Representatives. While the Constitution does give the states the power to prescribe "[t]he Times, Places and Manner of holding Elections for Senators and Representatives," it does so with an important limitation: "the Congress may at any time by Law make or alter such Regulations, except as to the Place of choosing Senators." U.S. const., art. 1, § 4. When Congress so acts, state laws that conflict with those federal laws are pre-empted.

4. Nearly 150 years ago, Congress enacted 2 U.S.C. § 7, pursuant to which Minnesota must allow its voters to choose their U.S. Representatives in the November general election. It must do so in every even-numbered year. *See id*. Congress has never changed that requirement—not during wars, not during economic depressions, and not during pandemics. The assurance that federal elections will happen, as scheduled, every two years has long been a part of the country's democratic tradition. It is an integral piece

of the rules and norms that ensure the vitality and legitimacy of the democratic process. And it is unequivocally mandated by federal law, with which the states (and the Secretary) must comply.

5. Because the Secretary is postponing the election for the 2nd Congressional District until next February, Minnesota Statute § 204B.13 requires that "the county auditor or municipal clerk shall post a notice in each precinct affected by a vacancy in nomination under this paragraph, informing voters of the reason for the vacancy in nomination and the procedures for filling the vacancy in nomination and conducting a special election as required by this section" (the "Posting Requirement"). The Postponement Provisions include the Posting Requirement.

6. The Posting Requirement, as well as the Secretary's communications that votes cast in the 2nd Congressional District will not count, impose substantial burdens on Minnesota voters in that District. Having heard the Secretary's statements and reviewed the notices at polling places, voters may be misled into thinking the ballots they are casting in the general election for the 2nd Congressional District will not be counted, despite federal law requiring that all votes be counted. Because of the confusion surrounding whether their vote will be counted, these voters may not vote.

7. Plaintiff Angela Craig ("Representative Craig"), the current U.S. Representative for Minnesota's 2nd Congressional District who is running for re-election, and Jenny Winslow Davies, a voter in the same District, bring this action seeking immediate relief from this Court, to ensure that the Secretary does not act in violation of federal law, to the direct, concrete, and irreparable injury of both Plaintiffs, as well as

thousands of Minnesota voters. Plaintiffs seek declaratory and injunctive relief that (1) declares the Postponement Provisions are unlawful as applied because they conflict with and are preempted by federal law, (2) prohibits the Secretary from enforcing the Postponement Provisions in the coming election as applied to Minnesota's 2nd Congressional District, and (3) allows that election to proceed as part of the November general election, as mandated by 2 U.S.C. § 7.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 because it arises under the Constitution and laws of the United States and involves a federal election.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events that give rise to Plaintiffs' claims will occur here and because the Defendant resides in this District.

10. This Court has authority to enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

11. Plaintiff Angela Craig is currently serving as the U.S. Representative for Minnesota's 2nd Congressional District. Representative Craig is a resident of Eagan, Minnesota. She is running for re-election this year in the 2nd Congressional District and is the Democratic nominee to be the Representative of this District.

12. Minnesota's Postponement Provisions directly harm Representative Craig. Representative Craig will lose votes from supporters who choose not to vote at all for the

House race in Minnesota's 2nd Congressional District during the general election because of the Secretary's statement that their votes "will not be counted." Further, Representative Craig has been campaigning, accepting contributions, and making campaign expenditures based on her reasonable assumption that the election for the 2nd Congressional District will proceed as set by federal law. The Postponement Provisions will require Representative Craig to limit her campaign expenses now to conserve resources for a potential special election in February 2021, thus limiting her ability to reach undecided voters. She will also be forced to expend additional funds and time after the general election in November, to continue her campaign up to the special election in February 2021.

13. In addition, Representative Craig will be harmed by the Postponement Provisions and Posting Requirement because, under federal law, her term of office expires on January 3, 2021. Thus, she will not be able to assume office until after February 9, 2021, the date of the special election. If Representative Craig wins re-election, she will have been deprived of the ability to represent her district for more than a month. And, residents of the 2nd Congressional District will be left without representation.

14. Plaintiff Jenny Winslow Davies is a resident of Apple Valley, Minnesota and a registered voter in the 2nd Congressional District. She has voted for a candidate in the 2nd Congressional District in the November general election and wants that vote to count and for her district to be represented in the House beginning in January 2021 when members are sworn in.

15. Ms. Davies will be harmed by the Postponement Provisions and Posting Requirement because though she has cast a vote in the November general election, that

vote will not count. Additionally, if a special election does not occur until February 2021, she will be deprived of representation in the 2nd Congressional District until the winner of that election is sworn in. This deprivation itself is in violation of federal law, which requires that Ms. Davies must be able to participate in an election to choose her U.S. Representative on the date set by Congress, except under unusual and highly limited exceptions as set forth in federal law, none of which are applicable here. Moreover, by misleading voters into thinking their votes will not count, the Posting Requirement, as well as the Secretary's communications that votes cast for the congressional office in the race for the 2nd Congressional District on their November general election ballots will not count, impose a substantial and unconstitutional burden on the voting rights of the Minnesota voters in the District, including Ms. Davies and the voters who would otherwise cast their ballots in favor of Representative Craig in this election.

16. Defendant Steve Simon ("Defendant" or "Secretary") is the Minnesota Secretary of State. The Secretary is sued in his official capacity. The Secretary is Minnesota's chief elections administrator and is responsible for the conduct of elections in Minnesota. *See, e.g.*, Minn. Stat. § 204B.27. Moreover, in the event that a "provision of the Minnesota Election Law cannot be implemented as a result of an order of a state or federal court," the Secretary is required to "adopt alternative election procedures to permit the administration of any election affected by the order." Minn. Stat. § 204B.47.

## STATEMENT OF FACTS

17. Nearly 150 years ago, shortly after the end of the Civil War, the United States Congress enacted 2 U.S.C. § 7, which sets a nationwide date for elections for the U.S.

House of Representatives on "[t]he Tuesday next after the 1st Monday in November, in every even numbered year[.]" 2 U.S.C. § 7.

18. The U.S. Supreme Court has found, when 2 U.S.C. § 7 and other "federal statutes speak of 'the election' of a Senator or Representative, they . . . refer to the combined actions of voters and officials meant to make a final selection of an officeholder[.]" *Foster v. Love*, 522 U.S. 67, 71 (1997). Thus, a state that provides for the election of a U.S. Representative on a different schedule, unless otherwise permitted by federal law, is necessarily pre-empted by 2 U.S.C. § 7.

19. It is true that 2 U.S.C. § 7 does not displace *all* state regulation of the times for holding federal elections. For example, courts have consistently held that states retain the power to enact procedures to facilitate voters participating in the federal election, including by offering early voting or voting by mail. *See, e.g.*, *Millsaps v. Thompson*, 259 F.3d 535, 549 (6th Cir. 2001)); *Voter Integrity Project, Inc. v. Bomer*, 199 F.3d 773, 776-77 (5th Cir. 2000). But this conclusion is itself mandated by federal law, including U.S. Constitutional provisions that protect the right to vote, to which Congress, as well as the states are restricted in their ability to regulate elections. It is also reflected in multiple federal statutory provisions that reflect Congress's approval of (and, in some cases require) the use of absentee voting. *See Bomer*, 199 F.3d at 776-77. And it is further required by the legislative history of 2 U.S.C. § 7 itself, which reflects the concern of the Congress that enacted it, that citizens be *able* to exercise their right to vote. *See Bomer*, 199 F.3d at 777 (citation omitted).

20. Indeed, as the U.S. Supreme Court has found, 2 U.S.C. § 7 was meant to *protect* the right to vote against unnecessary burden: the sponsor of the original bill was concerned (among other things) "with the burden on citizens forced to turn out *on two different election days* to make final selections of federal officers in Presidential election years[.]" *Foster*, 522 U.S. at 74 (emphasis added).

21. But this is *precisely* what the Minnesota Postponement Provisions will require in this case. Rather than permitting Minnesota's voters to select their U.S. Representative to the 2nd Congressional District in the regularly scheduled November election (as mandated by federal law), the Secretary has announced that voters in that District will be forced to turn out on two different election days to make final selections for federal officers who will begin their terms of service in January—first, in the ordinarily-scheduled November election that is currently on-going, and then again in the special election to be held next February.

22. The United States Congress has carved out exceptions to the rule set forth in 2 U.S.C. § 7, but they do not apply here. Specifically, 2 U.S.C. § 8 allows states to set times for House elections other than that prescribed by 2 U.S.C. § 7, but *only* to fill vacancies "caused by [1] a failure to elect at the time prescribed by law, or [2] by the death, resignation, or incapacity of a person elected[.]"

23. The first part of 2 U.S.C. § 8, which applies when there is "a failure to elect [a U.S. Representative] at the time prescribed by law," is understood to apply only when "*exigent* circumstances," such as a natural disaster or a federal court's conclusion that the apportionment map under which the election was to be held violated the Constitution or

federal law, "*preclude* holding an election on that date[.]" *Busbee v. Smith*, 549 F. Supp. 494, 525 (D.D.C. 1982), *aff'd*, 459 U.S. 1166 (1983) (emphasis added).

24. The death of one candidate in a race does not preclude Minnesota from holding an election for the 2nd Congressional District in the regularly scheduled general election. States, of course, hold elections all the time even when a candidate passes away unexpectedly close to the election.

25. The only impediment to Minnesota's holding the election for the 2nd Congressional District as required by federal law is Minnesota's own law, as set forth in the Postponement Provisions. But this is not an "exigent" circumstance at all. It is a state law that conflicts with the federal laws that govern when states must hold elections for the U.S. House of Representatives.

26. A state cannot avoid the mandate that it hold an election as federal law requires—or avoid its consequent obligation to *count* the votes cast by voters in that election for a U.S. congressional seat—by a law that itself "invents a 'failure to elect.'" *Pub. Citizen, Inc. v. Miller*, 813 F. Supp. 821, 830 (N.D. Ga. 1993), *aff'd*, 992 F.2d 1548 (11th Cir. 1993).

27. Minnesota's law, which the Secretary admits will result in the ballots that voters are currently casting and will cast for the 2nd Congressional District in the November general election *not being counted*, is thus different than a run-off election statute under which an election is held on the day proscribed by federal law and the results of that election are given binding effect by the state. *See id.*; *see also Foster*, 522 U.S. at 71 n.3 (noting that "[t]he only explanation of this provision offered in the legislative history

is Senator Allen G. Thurman's statement that 'there can be no failure to elect except in those States in which a majority of all the votes is necessary to elect a member.' In those States, if no candidate receives a majority vote on federal election day, there has been a failure to elect and a subsequent run-off election is required.") (quoting Cong. Globe, 42d Cong., 2d Sess., 677 (1872)).

28. There is *no* authority for finding that a state can do what Minnesota plans to do here—that is, reject all of the ballots cast in an election for a U.S. House of Representative race at the time prescribed by Congress, and instead wait to hold that election (and give "binding effect" to any votes cast) until several months later.

29. The second part of 2 U.S.C. § 8 by its terms creates an exception for when "*a person elected*" dies, resigns or becomes incapacitated. (Emphasis added.) Congress has never, however, created a mechanism for states to alter the date of a federal election due to a vacancy *in nomination*.

30. By their terms, Minnesota's Postponement Provisions and Posting Requirement apply whenever there is a "[a] vacancy in *nomination* for a partisan office" within 79 days of the general election, including when "a major political party candidate" who has been nominated in accordance with state law dies. Minn. Stat. §§ 204B.13(1), (2)(c) (emphasis added).

31. In such cases, the Postponement Provisions require that "the county and state canvassing boards *must not certify the vote totals* for" the office in which the deceased candidate was running "from the general election." *Id.* § 204B.13(2)(c) (emphasis added).

32. Instead, "the office must be filled at a special election held in accordance with this section." *Id.* § 204B.13(2)(c).

33. The Postponement Provisions set the date of the special election as "the second Tuesday in February of the year following the year the vacancy in nomination occurred." *Id.* § 204B.13(7).

34. Because the Postponement Provisions change the date of elections when a *candidate* (not an elected official) dies within 79 days of office, even if the state is not precluded by that candidate's death from holding the election on the date mandated by federal law, they conflict with and are preempted by federal law as applied to elections for federal office. *See* 2 U.S.C. § 7; *see also Foster*, 522 U.S. at 69; *Wyeth v. Levine*, 555 U.S. 555, 594 (2009).

35. One of the candidates running to represent Minnesota's 2nd Congressional District in the coming general election was Adam Weeks, who was running as the LMNP candidate.

36. The LMNP is a major political party in Minnesota, and Mr. Weeks was nominated to serve as his party's candidate in accordance with state law.

37. Mr. Weeks unexpectedly passed away on September 21, 2020.

38. Shortly after Mr. Weeks' death, the Secretary announced that he would postpone the election for Minnesota's 2nd Congressional District pursuant to the Postponement Provisions and Posting Requirement.

39. The Secretary's website directs voters that they should "continue to vote"; however, the Secretary does not intend to count the votes cast in that race. *See*

https://www.sos.state.mn.us/about-the-office/news-room/secretary-simon-releases-statement-on-death-of-cd2-candidate/.

40. Instead, the actual election to choose a candidate to represent Minnesotans from the State's 2nd Congressional District will *not* be held until February 9, 2021, pursuant to Minnesota Statute § 204B.13.

41. Mr. Weeks' death is not a "vacancy" under 2 U.S.C. § 8, and Congress has not authorized Minnesota to modify when the election for the U.S. House from the 2nd Congressional District will be held to any time other than that required by 2 U.S.C. § 7.

42. Because the Secretary invoked the Postponement Provisions and Posting Requirement, county election officials are now required to post notices about the vacancy in each precinct under Minnesota Statute § 204B.13(2)(c). These notices impede the right of Minnesota voters to vote because they could mislead them into believing their votes cast for this race in the regularly scheduled general election will not count, when, in fact, Minnesota is required to count them under federal law.

43. The Secretary's decision to postpone the election for the U.S. House seat in Minnesota's 2nd Congressional District conflicts with and is thus preempted by federal law. *See* 2 U.S.C. § 7; *see also Foster*, 522 U.S. at 69; *Wyeth*, 555 U.S. at 594.

## **CLAIMS FOR RELIEF**

### **COUNT 1**

**Declaratory Judgment Regarding Preemption of State Law**
**28 U.S.C. §§ 2201, 2202; 2 U.S.C. § 7**

44. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

45. A case of actual controversy has arisen regarding whether 2 U.S.C. § 7 preempts the Minnesota Postponement Provisions and Posting Requirement.

46. Under the federal statute, Minnesota is required to hold an election for and give binding effect to ballots cast to elect its U.S. Representatives in the November general election.

47. The Secretary has announced that, in accordance with Minnesota's Postponement Provisions and Posting Requirement, ballots cast in the November general election for Minnesota's 2nd Congressional District this year will not be given legal effect.

48. Instead, voters in that District will have any ballots they cast for that race in the general election discarded, and will have to turn out again in February for a special election to select their U.S. Representative for the 2nd Congressional District.

49. The Postponement Provisions and Posting Requirement do not fall within the limited exceptions in 2 U.S.C. § 8 permitting states to set alternative times for federal elections.

50. The Postponement Provisions and Posting Requirement are therefore preempted by federal law. *See Foster*, 522 U.S. at 69; *Wyeth*, 555 U.S. at 594.

# COUNT 2

## Undue Burden on the Right to Vote
## U.S. Const. Amend. I and XIV, 42 U.S.C. § 1983, 28 U.S.C. §§ 2201, 2202

51. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

52. The right to vote is a "fundamental" constitutional right. *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667 (1966). "Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).

53. Under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, state officials cannot implement election practices that unduly burden the right to vote. To determine whether an election practice imposes an undue burden on the right to vote in violation of the First and Fourteenth Amendments, federal courts apply the *Anderson-Burdick* balancing test. If the burden is severe, the policy imposing that severe burden "must be 'narrowly drawn to advance a state interest of compelling importance[.]'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). But even if the burden is less than severe, the court asks whether a state interest justifies the burden imposed, by "weigh[ing] 'the character and magnitude of the asserted injury to the rights . . . that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Id.* at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

54. The Posting Requirement as well as the Secretary's communications that votes cast in the 2nd Congressional District in the November general election will not count impose substantial burdens on Minnesota voters in that District. Having heard the Secretary's statements and reviewed the notices at polling places, voters may be misled into thinking their ballots will not be counted despite federal law requiring that all votes be counted.

55. Because of the confusion surrounding whether their votes will be counted, these voters may not vote. Courts regularly find that voter confusion constitutes a burden on the right to vote, especially where it may lead to disenfranchisement. *See, e.g., Coal. for Educ. in Dist. One v. Bd. of Elections of City of N.Y.*, 370 F. Supp. 42, 51 (S.D.N.Y. 1974), *aff'd*, 495 F.2d 1090 (2d Cir. 1974) (recognizing "confusion [about where to vote stemming from improper election worker instruction] undoubtedly denied some . . . voters the right to [cast] an effective vote"); *Bryanton v. Johnson*, 902 F. Supp. 2d 983, 995–96 (E.D. Mich. 2012) (holding inconsistent standards regarding a citizenship checkbox on certain voting forms caused widespread confusion, which likely "interfere[d] with the right of all voters"); *Guare v. State of New Hampshire*, 117 A.3d 731, 738 (N.H. 2015) (holding voter registration form requirement that caused widespread confusion that led "an otherwise qualified voter not to register to vote" imposed an "unreasonable burden" on "the fundamental right to vote").

56. There is no justification for the Secretary's communications or the Posting Requirement that outweighs the burdens that these statements and provisions impose on voters. The information is simply wrong as a matter of law: in fact, federal law requires the

election for the 2nd Congressional District be held (and thus that all votes cast be given legal effect) in the regularly scheduled November general election. The state has no legitimate (much less substantial) interest in misleading voters with pronouncements contrary to federal law. Thus, even if the Court were to find that the burdens were not severe and were subject to a less searching level of scrutiny than that applied when a law imposes a severe burden on voters, the challenged actions and provisions would still violate the First and Fourteenth Amendments.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ask this Court to enter judgment in their favor and provide the following relief:

a) A declaration that Minnesota's Postponement Provisions are preempted by federal statute, including 2 U.S.C. § 7, and are thus unlawful and unenforceable;

b) A declaration that Minnesota's Postponement Provisions, including the Posting Requirement, violate the First and Fourteenth Amendments to the U.S. Constitution, and are thus unlawful and unenforceable;

c) Preliminarily and permanently enjoining Defendant, his respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from holding the election or failing to give legal effect to ballots cast for the House seat in Minnesota's 2nd Congressional District as part of the regularly scheduled November general election;

c) Preliminarily and permanently enjoining Defendant, his respective agents, officers, employees, and successors, and all persons acting in concert with each or any of

them, from enforcing the Postponement Provisions or Posting Requirement in any way, including but not limited to by (i) delaying the election for the House seat in Minnesota's 2nd Congressional District; (ii) failing to give legal effect to lawful ballots cast in the regularly scheduled general election for the 2nd Congressional District race; (iii) posting any notice under the Posting Requirement regarding the election for the House seat in Minnesota's 2nd Congressional District; and (iv) declining to certify the results from the regularly scheduled November general election for the House seat in Minnesota's 2nd Congressional District.

    d)    Requiring Defendant to remove any notices posted under the Posting Requirement to date and correct any statements suggesting that votes cast in the November General election for the 2nd Congressional District will "not count";

    e)    Awarding Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to any and all applicable laws; and

    f)    Granting such other and further relief as the Court deems just and proper.

DATED:  September 28, 2020				LOCKRIDGE GRINDAL NAUEN P.L.L.P.


								s/Charles N. Nauen
								Charles N. Nauen (#121216)
								David J. Zoll (#0330681)
								Rachel A. Kitze Collins (#0396555)
								100 Washington Avenue S., Suite 2200
								Minneapolis, MN 55401
								Tel:  (612) 339-6900
								Fax:  (612) 339-0981
								cnnauen@locklaw.com
								djzoll@locklaw.com
								rakitzecollins@locklaw.com

								PERKINS COIE LLP

								Marc Erik Elias (*pro hac vice* pending)
								Joel J. Ramirez (*pro hac vice* pending)
								700 Thirteenth Street NW, Suite 800
								Washington, DC 20005-3960
								Tel:  (202) 654-6200
								Fax:  (202) 654-6211
								MElias@perkinscoie.com
								JoelRamirez@perkinscoie.com

								Kevin J. Hamilton (*pro hac vice* pending)
								Holly M. Simpkins, (*pro hac vice* pending)
								Laura C. Hill (*pro hac vice* pending)
								Nitika Arora (*pro hac vice* pending)
								1201 Third Avenue, Suite 4900
								Seattle, WA  98101-3099
								Tel:  (206) 359-8000
								Fax:  (206) 359-9000
								KHamilton@perkinscoie.com
								HSimpkins@perkinscoie.com
								LHill@perkinscoie.com
								NArora@perkinscoie.com

								*Attorneys for Plaintiffs*