## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **ANGELA CRAIG** and<br>**JENNY WINSLOW DAVIES**, | Civil No. 0:20-cv-2066 WMW/TNL |
| Plaintiffs, | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| **STEVE SIMON**, in his official capacity as Minnesota Secretary of State, | |
| Defendant. | **EXPEDITED HANDLING REQUESTED UNDER LOCAL RULE 7.1(d).** |

# <u>TABLE OF CONTENTS</u>

I.    Introduction ...................................................................................................... 1

II.   Request for Expedited Handling ........................................................................ 2

III.  Background ........................................................................................................ 4

    A.   Federal law requires that states hold elections for the U.S. House of Representatives every even-numbered year in November. .............................. 4

    B.   Minnesota Statute § 204B.13 requires that elections for offices, where a candidate for that office dies within 79 days of the general election,  cannot be held until the following February. ................................................ 5

    C.   Due to the death of the LMNP candidate for the 2nd Congressional  District, the Secretary has announced that the election for that U.S. House District will be postponed until February 2021. ............................................ 6

IV.   Argument ........................................................................................................... 6

    A.   Legal Standard ......................................................................................... 6

    B.   Plaintiffs are likely to succeed on the merits. .......................................... 7

        1.   The Postponement Provisions are preempted by federal law. ........... 7

        2.   The Postponement Provisions also unconstitutionally burden Plaintiffs' fundamental rights ........................................................... 11

    C.   Plaintiffs will suffer irreparable harm in the absence of an injunction. ........ 14

    D.   The balance of equities tips decisively in Plaintiffs' favor. ............................ 16

    E.   The public interest strongly favors an injunction. ........................................... 17

V.    Conclusion ........................................................................................................ 18

## TABLE OF AUTHORITIES

CASES

*Bryanton v. Johnson*,
    902 F. Supp. 2d 983 (E.D. Mich. 2012)..................................................................13

*Burdick v. Takushi*,
    504 U.S. 428 (1992)..............................................................................................12

*Busbee v. Smith*,
    549 F. Supp. 494 (D.D.C. 1982), *aff'd*, 459 U.S. 1166 (1983)...............................9

*Coal. for Educ. in Dist. One v. Bd. of Elections of City of N.Y.*,
    370 F. Supp. 42 (S.D.N.Y 1974.), *aff'd*, 495 F.2d 1090 (2d Cir. 1974)...................12

*Cunningham v. Adams*,
    808 F.2d 815 (11th Cir. 1987) ...............................................................................14

*Devose v. Herrington*,
    42 F.3d 470 (8th Cir. 1994) ....................................................................................7

*Ex Parte Siebold*,
    100 U.S. 371 (1875)..............................................................................................10

*Fish v. Kobach*,
    840 F.3d 710 (10th Cir. 2016) ...............................................................................10

*Foster v. Love*,
    522 U.S. 67 (1997)......................................................................................... passim

*Guare v. State of New Hampshire*,
    117 A.3d 731 (N.H. 2015) .....................................................................................13

*Harper v. Va. State Bd. of Elections*,
    383 U.S. 663 (1966)..............................................................................................13

*Hispanic Interest Coal. of Alabama v. Governor of Alabama*,
    691 F.3d 1236 (11th Cir. 2012) .............................................................................17

*Hunter v. Hamilton Cty. Bd. of Elections*,
    635 F.3d 219 (6th Cir. 2011) .................................................................................17

*Jones v. Jegley*,
    947 F.3d 1100 (8th Cir. 2020) ...........................................................................7, 14

*League of Women Voters of N. Carolina v. North Carolina*,
    769 F.3d 224 (4th Cir. 2014) ................................................................14, 16, 17

*Mainstream Fashions Franchising, Inc. v. All These Things, LLC*,
    19-CV-02953-(SRN/TNL), 2020 WL 1812501 (D. Minn. Apr. 9, 2020) ..............16

*Marcus v. Iowa Public Television*,
    97 F.3d 1137 (8th Cir. 1996) ..............................................................................16

*Millsaps v. Thompson*,
    259 F.3d 535 (6th Cir. 2001) ................................................................................8

*Norman v. Reed*,
    502 U.S. 279 (1992)............................................................................................12

*Obama for Am. v. Husted*,
    697 F.3d 423 (6th Cir. 2010) ........................................................................14, 17

*Peer v. Lewis*,
    No. 06-60146-CIV, 2008 WL 2047978 (S.D. Fla. May 13, 2008), *aff'd*, No.
    08-13465, 2009 WL 323104 (11th Cir. Feb. 10, 2009) ........................................14

*Pub. Citizen, Inc. v. Miller*,
    813 F. Supp. 821 (N.D. Ga. 1993), *aff'd*, 992 F.2d 1548 (11th Cir. 1993) ...........10, 11

*Reynolds v. Sims*,
    377 U.S. 533 (1964)............................................................................................16

*Rodgers v. Bryant*,
    942 F.3d 451 (8th Cir. 2019) ..............................................................................17

*Voter Integrity Project, Inc. v. Bomer*,
    199 F.3d 773 (5th Cir. 2000) ................................................................................8

*Wesberry v. Sanders*,
    376 U.S. 1 (1964)................................................................................................13

*Winter v. Nat'l Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)..................................................................................................7

## STATUTES

2 U.S.C. § 7.................................................................................................. passim

2 U.S.C. § 8..............................................................................................4, 9, 10

Minn. Stat. § 203B.081(1) ............................................................................2, 14

Minn. Stat. § 204B.13 .................................................................................. passim

**OTHER AUTHORITIES**

Local Rule 7.1(d) ........................................................................................................2

*Secretary Simon Releases Statement on Death of CD2 Candidate*,
   https://www.sos.state.mn.us/about-the-office/news-room/secretary-simon-
   releases-statement-on-death-of-cd2-candidate/ ........................................................2

U.S. Const., art. 1, § 4, cl. 1 ...........................................................................................4

## I.     Introduction

At issue is the enforceability of a Minnesota statute that conflicts with federal law mandating when states must hold elections for the U.S. House of Representatives. Unless immediately enjoined, Minnesota Statute § 204B.13 (the "Postponement Provisions") will threaten the right to vote of countless Minnesota voters who are entitled to cast their ballots and have them counted for Minnesota's 2nd Congressional District in the regularly scheduled November general election, and it will also cause serious irreparable harm to the Plaintiffs in this litigation, U.S. Representative Angela Craig, who is running for re-election in the 2nd Congressional District, and Jenny Winslow Davies, a voter whose right to cast her vote and have it counted will be effectively and unlawfully denied.

Federal law requires states to hold elections for U.S. Representatives—and give ballots cast by voters binding legal effect—on the same uniform timetable, with all states holding such elections every even numbered year in a November general election. In direct contrast to these requirements, Minnesota's Postponement Provisions provide that, if a major political party candidate nominated to run in a coming election dies after the 79th day before the election, the election is postponed until a special election to be held in February of the following year. The only office to which the statute does not apply by its plain terms is a race for Lieutenant Governor.

Thus, after the candidate for the 2nd Congressional District nominated by the Legal Marijuana Now Party ("LMNP") unexpectedly passed away last week, Defendant Minnesota Secretary of State Steve Simon (the "Secretary") announced that, by operation of the Postponement Provisions, ballots cast for the 2nd Congressional District in the

1

November general election will not be counted, and the voters in that District will not be able to select a U.S. Representative to represent them in the coming Congress until a special election is held on February 9, 2021.

Because the Postponement Provisions are pre-empted by federal law as applied to elections for the U.S. House of Representatives, and because the Secretary's purported enforcement of them violates the First and Fourteenth Amendments by imposing an unjustified (indeed, unlawful) burden on the right of Minnesota's voters to have their ballots counted for that race in the November general election, emergency judicial relief is urgently needed. Specifically, Plaintiffs seek an emergency injunction prohibiting the Secretary from (1) enforcing the Postponement Provisions as applied to the 2nd Congressional District race in the November general election, (2) refusing to give legal effect to the ballots cast in that race in the November general election, and (3) impeding the right of Minnesota's voters to vote in that race in the November general election by postings or other communications to voters indicating that their ballots will not be counted.

## II.    Request for Expedited Handling

Plaintiffs request that the Court set an expedited briefing schedule and hearing for this motion under Local Rule 7.1(d). Minnesota's voters have already begun casting ballots in the November general election. *See* Minn. Stat. § 203B.081(1). Yet on September 24th, the Secretary suddenly and publicly announced that ballots cast in the 2nd Congressional District race "will not be counted," in accordance with the Postponement Provisions. *See* https://www.sos.state.mn.us/about-the-office/news-room/secretary-simon-releases-statement-on-death-of-cd2-candidate/. Moreover, the Postponement Provisions require

2

that "the county auditor or municipal clerk shall post a notice in each precinct affected by a vacancy in nomination under this paragraph, informing voters of the reason for the vacancy in nomination and the procedures for filling the vacancy in nomination and conducting a special election as required by this section." Minn. Stat. § 204B.13 (the "Posting Requirement"). Although the Secretary advised that "[e]ligible voters in the Second Congressional district should continue to vote," unless immediately corrected and reversed, his statement and any postings put up as a result of the Posting Requirement threaten to cause voters to forego their right to cast their ballots for the 2nd Congressional District, because of these statements by the State that their ballots will not count. *See* Declaration of Representative Angela Craig ("Craig Decl.") ¶ 11. If not enjoined, the Postponement Provisions will also require the Secretary to forbid the certification of the 2nd Congressional District race as a result of ballots cast in the November general election in direct violation of federal law. In the meantime, Representative Craig will be forced to limit certain activities, just weeks before the general election, to conserve campaign resources and/or raise additional funds to prepare for a February special election. *See* Craig Decl. ¶¶ 8–9. Conserving campaign funds now limits her ability to reach undecided voters before November 3. *Id.* And voters in the 2nd Congressional District face the possibility that they will be unrepresented in the House when Representative Craig vacates her seat and members are sworn in in January 2021. *Id.* ¶ 10; Declaration of Jenny Davies ("Davies Decl.") ¶¶ 4–6.

### III.    Background

#### A.    Federal law requires that states hold elections for the U.S. House of Representatives every even-numbered year in November.

The requirement, and expectation, that all voters in the United States will be able to select their federal Congressional representatives in a November general election that takes place every two years is a critical part of the country's democratic tradition. Nearly 150 years ago, shortly after the end of the Civil War, the U.S. Congress enacted 2 U.S.C. § 7, which requires that states hold such elections on "[t]he Tuesday next after the 1st Monday in November, in every even numbered year." 2 U.S.C. § 7. As interpreted by the U.S. Supreme Court, this provision requires that states uniformly hold elections, which "refer[s] to the combined actions of voters and officials meant to make a final selection of an officeholder," consistent with this schedule set by Congress. *Foster v. Love*, 522 U.S. 67, 71 (1997). Congress has carved out an exception to the rule set forth in 2 U.S.C. § 7 for certain types of "vacancies," which can be found in 2 U.S.C. § 8. That provision allows states to set times for U.S. House elections other than that prescribed by 2 U.S.C. § 7, but only to fill vacancies caused by either "[1] a failure to elect at the time prescribed by law, or [2] by the death, resignation, or incapacity of a person elected." 2 U.S.C. § 8.

The Constitution gives the states the power to prescribe "[t]he Times, Places and Manner of holding Elections for Senators and Representatives," provided that Congress has not enacted competing regulations. U.S. Const., art. 1, § 4, cl. 1. When Congress so acts, state laws that conflict with those federal laws are pre-empted. Thus, a state law that

provides for the election of a U.S. Representative on a different schedule than that required

by 2 U.S.C. § 7 is necessarily pre-empted, unless it is otherwise permitted by federal law.

**B.      Minnesota Statute § 204B.13 requires that elections for offices, where a major party candidate for that office dies within 79 days of the general election, cannot be held until the following February.**

In 2013 the Minnesota legislature amended the state's elections code to postpone

elections for all partisan offices except that of Lieutenant Governor when a major political

party candidate nominated for the office dies within 79 days of the election date. Minn.

Stat. §§ 204B.13(1)(a)(1), (2)(c). The Postponement Provisions provide that "the office

*must* be filled at a special election held in accordance with this section" and set the date for

the special election as "the second Tuesday in February of the year following the year the

vacancy in nomination occurred." *Id*. §§ 204B.13(2)(c), (7) (emphasis added).

When the Postponement Provisions are triggered, the rest of the general election

proceeds as scheduled, but county and state canvassing boards are prohibited from

"certify[ing] the vote totals for [the impacted] office from the general election." *Id*.

§ 204B.13(2)(c). The Postponement Provisions also require county election officials to

notify voters about the vacancy in nomination and the special election (the "Posting

Requirement"):

> On the date of the general election, the county auditor or municipal clerk shall post a notice in each precinct affected by a vacancy in nomination under this paragraph, informing voters of the reason for the vacancy in nomination and the procedures for filling the vacancy in nomination and conducting a special election as required by this section. The secretary of state shall prepare and electronically distribute the notice to county auditors in each county affected by a vacancy in nomination.

*Id*.

5

**C.     Due to the death of the LMNP candidate for the 2nd Congressional District, the Secretary has announced that the election for that U.S. House District will be postponed until February 2021.**

One of the candidates for Minnesota's 2nd Congressional District was the LMNP candidate, Adam Weeks. The Secretary recognizes the LMNP as a major political party in Minnesota. *See* Declaration of Charles Nauen ("Nauen Decl."), Ex. 1.

Mr. Weeks passed away unexpectedly on September 21, 2020. Shortly after Mr. Weeks' death, the Secretary announced that he would postpone the election for the U.S. House seat in Minnesota's 2nd Congressional District pursuant to the Postponement Provisions. *See* Nauen Decl., Ex. 2. The Secretary set February 9, 2021 as the date for a special election. *Id.* Although the Secretary stated that "[e]ligible voters in the Second Congressional district should continue to vote" and that the "race will still appear on the ballot," he also stated that "the votes in that race will not be counted." *Id.* Further, because the Secretary invoked the Postponement Provisions, county election officials are now required to post notices about the vacancy in each precinct under the Posting Requirement in Minnesota Statute § 204B.13(2)(c). In his press release, the Secretary said he had already "reached out to local elections officials with guidance on sharing information about next steps for the February 2021 special election." *Id.*

## IV.    Argument

### A.     Legal Standard

"When deciding whether to grant" a preliminary injunction, a district court must assess whether (1) plaintiffs are "likely to succeed on the merits," (2) plaintiffs are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities

tip[s] in [their] favor," and (4) "an injunction [is] in the public interest." *Jones v. Jegley*, 947 F.3d 1100, 1104–05 (8th Cir. 2020) (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008)). The purpose of a preliminary injunction is "to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994).

**B.    Plaintiffs are likely to succeed on the merits.**

**1.    The Postponement Provisions are preempted by federal law.**

Federal law clearly establishes the time at which states must hold their elections for the U.S. House of Representatives, requiring that they be held uniformly across the country as part of a general election held on "[t]he Tuesday next after the 1st Monday in November, in every even numbered year." 2 U.S.C. § 7. Because the Elections Clause gives states the power to enact laws governing the mechanism of congressional elections only to the extent that Congress has declined to do so through federal law, state laws that violate this provision are preempted. *See Foster*, 522 U.S. at 69, 72. This case presents an easy question: do Minnesota's Postponement Provisions, as applied to the 2nd Congressional District in this year's November election, run afoul of federal law? The answer is unavoidably yes.

To be clear, 2 U.S.C. § 7 does not displace *all* state regulation of the times for holding federal elections. Importantly, among the animating reasons for setting a uniform time for the election of federal officeholders was the concern that states might otherwise burden the right to vote, including specifically by imposing a "burden on citizens forced to turn out on two different election days to make final selections of federal officers in

Presidential election years." *Foster*, 522 U.S. at 73. The U.S. Supreme Court has also rejected the argument that the statute requires that all ballots must be cast and counted on the second Tuesday in November. Instead, it has found that the statute's use of the term "election," "plainly refer[s] to the combined actions of voters and officials meant to make a final selection of an officeholder[.]" *Foster*, 522 U.S. at 71.

Thus, courts have consistently held that states retain the power to enact procedures to *facilitate* voters participating in the general federal election, including by offering early voting or voting by mail. *See, e.g.*, *Millsaps v. Thompson*, 259 F.3d 535, 549 (6th Cir. 2001)); *Voter Integrity Project, Inc. v. Bomer*, 199 F.3d 773, 776–77 (5th Cir. 2000). This conclusion is further mandated by federal law—including provisions in the U.S. Constitution that protect the right to vote—that restrict Congress as well as the states in their ability to regulate elections. It is also reflected in multiple federal statutory provisions that reflect Congress's approval of (and, in some cases require) the use of absentee voting. *See Bomer*, 199 F.3d at 776–77.

The Postponement Provisions, however, do not *facilitate* voters in casting their ballots in the general federal election in November. Instead, they do precisely what states are not permitted to do: they *prohibit* voters' ballots cast for the impacted race in the November election from being given *any legal effect* and impose on those voters the "burden [of being] forced to turn out on two different election days to make final selections of federal officers in Presidential election years." *Foster*, 522 U.S. at 74. This is true even when one of the remaining candidates wins that election: Minnesota law directs that "county and state canvassing boards must not certify the vote totals for that office from the

8

general election." Minn. Stat. § 204B.13(2)(c). Thus, the Secretary's application of the Postponement Provisions to the race for Minnesota's 2nd Congressional District in November's general election clearly conflicts with 2 U.S.C. § 7.

Tellingly, Congress *has* indicated when states retain authority to set times for holding elections for federal races other than as set forth in 2 U.S.C. § 7, but those exceptions do not apply here. Specifically, 2 U.S.C. § 8 permits states to set times to fill "vacancies," but *only* where the vacancy was "caused by [1] a failure to elect at the time prescribed by law, or [2] by the death, resignation, or incapacity of a person elected." The vacancy in nomination created by Mr. Weeks' death in October is not a "vacancy" under Section 8.

The first part of 2 U.S.C. § 8—"failure to elect at the time prescribed by law"— applies only when "exigent circumstances," such as a natural disaster or a federal court's conclusion that the apportionment map under which the election was to be held violated the Constitution or federal law, "*preclude* holding an election on that date." *Busbee v. Smith*, 549 F. Supp. 494, 525 (D.D.C. 1982), *aff'd*, 459 U.S. 1166 (1983) (emphasis added). But the death of one candidate in a race does not preclude Minnesota from holding an election for the 2nd Congressional District in the regularly scheduled general election. This much is proven by the plain text of the Postponement Provisions themselves, which do not apply when a candidate for the office of Lieutenant Governor passes away. Minn. Stat. § 204B.13(5). States, of course, hold elections even when a candidate passes away unexpectedly close to the election. Minnesota itself did so in 2002, when sitting U.S. Senator Paul Wellstone tragically died a mere eleven days before the November general

election in which he was running. Minnesota had not yet enacted the Postponement Provisions, and that election continued as scheduled, consistent with federal law. The only thing that precludes Minnesota's holding of the election for the 2nd Congressional District as part of the regularly scheduled November election is Minnesota's own law as set forth in the Postponement Provisions. But a state cannot manufacture exigent circumstances by enacting state laws creating additional exceptions to the election timeframe prescribed in 2 U.S.C. § 7. *See Pub. Citizen, Inc. v. Miller*, 813 F. Supp. 821, 830 (N.D. Ga. 1993), *aff'd*, 992 F.2d 1548 (11th Cir. 1993).

The second part of 2 U.S.C. § 8, by its terms, creates an exception for when "a person *elected*" dies, resigns, or becomes incapacitated. *Id*. (emphasis added). Congress has never created a mechanism for states to alter the date of a federal election due to a vacancy *in nomination*. Representative Craig is and remains the representative from Minnesota's 2nd Congressional District, and thus there is no vacancy in that seat.

Accordingly, the Postponement Provisions extend beyond the limited authority Congress has granted Minnesota to set a time for federal elections. If Congress wanted to permit states to move Election Day for federal elections due to a vacancy in nomination, "it would have so indicated." *Fish v. Kobach*, 840 F.3d 710, 729 (10th Cir. 2016). Because Congress did not so indicate, the Postponement Provisions conflict with 2 U.S.C. § 7 and are preempted. *See Foster*, 522 U.S. at 69 ("[T]he regulations made by Congress are paramount to those made by the State legislature; and if they conflict therewith, the latter, so far as the conflict extends, ceases to be operative." (quoting *Siebold*, 100 U.S. at 384)).

Finally, the Secretary's own public statements confirm that the application of the

Postponement Provisions in this case will result in the ballots that voters are currently casting and will cast for the 2nd Congressional District in the November general election *not being counted*. As such, this case presents a different circumstance than a run-off statute under which an election is held on the day proscribed by federal law and the results of that election are given binding effect by the state. *See Pub. Citizen*, 813 F. Supp. at 830; *see also Foster*, 522 U.S. at 71 n.3 (noting that "[t]he only explanation of this provision offered in the legislative history is Senator Allen G. Thurman's statement that 'there can be no failure to elect except in those States in which a majority of all the votes is necessary to elect a member.' In those States, if no candidate receives a majority vote on federal election day, there has been a failure to elect and a subsequent run-off election is required.") (quoting Cong. Globe, 42d Cong., 2d Sess., 677 (1872)). There is *no* authority for finding that a state can do what Minnesota plans to do here—i.e., reject all of the ballots cast in an election for a U.S. House of Representative race at the time prescribed by Congress, and instead wait to hold that election (and give "binding effect" to any votes cast) until several months later.

For all of these reasons, Plaintiffs are likely to succeed on their claim that the Postponement Provisions are pre-empted as applied here.

### 2. The Postponement Provisions also unconstitutionally burden Plaintiffs' fundamental rights.

For the reasons discussed above, Minnesota voters have the right to cast votes for the 2nd Congressional District in the previously scheduled November general election and have those votes counted. By misleading them into thinking their votes will not count, the

Posting Requirement, as well as the Secretary's communications that votes cast in the race for the 2nd Congressional District on their November general election ballots will not count, impose a substantial and unconstitutional burden on the voting rights of voters in the District, including Ms. Davies and the voters who would otherwise cast their ballots in favor of Representative Craig in this election.

To determine whether a state's election practice imposes an undue burden on the right to vote in violation of the First and Fourteenth Amendments, federal courts apply the *Anderson-Burdick* balancing test. If the burden is severe, the policy imposing that severe burden "must be 'narrowly drawn to advance a state interest of compelling importance.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). Even if the burden is less than severe, the court asks whether a state interest justifies the burden imposed, by "weigh[ing] 'the character and magnitude of the asserted injury to the rights . . . that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Id.* at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

Voters have already begun to cast their ballots in the election for the 2nd Congressional District race. Then, suddenly, four days ago, the Secretary announced that, although the race would remain on the ballot and eligible voters should continue to vote, their voters would not count in that race. The Secretary's announcement (and intent to enforce the Postponement Provisions) threaten to inject chaos into the election that will impose unlawful barrier to the right to vote. Specifically, because of the confusion that the

Secretary has created as to whether their vote will be counted, many voters may not vote at all. Courts regularly find that voter confusion constitutes a burden on the right to vote, especially where it may lead to disenfranchisement. *See, e.g.*, *Coal. for Educ. in Dist. One v. Bd. of Elections of City of N.Y.*, 370 F. Supp. 42, 51 (S.D.N.Y 1974.), *aff'd*, 495 F.2d 1090 (2d Cir. 1974) (recognizing "confusion [about where to vote stemming from improper election worker instruction] undoubtedly denied some . . . voters the right to [cast] an effective vote"); *Bryanton v. Johnson*, 902 F. Supp. 2d 983, 995–96 (E.D. Mich. 2012) (holding inconsistent standards regarding a citizenship checkbox on certain voting forms caused widespread confusion, which likely "interfere[d] with the right of all voters"); *Guare v. State of New Hampshire*, 117 A.3d 731, 738 (N.H. 2015) (holding voter registration form requirement that caused widespread confusion that led "an otherwise qualified voter not to register to vote" imposed an "unreasonable burden" on "the fundamental right to vote"). Because the right to vote is a "fundamental" constitutional right, this burden is severe. *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667 (1966). "Other rights, even the basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).

On the flipside, there is no justification for the Secretary's communications or the Posting Requirement that can fairly outweigh the burdens they impose on voters. The Secretary's statements and the notices to be posted at polling stations are, simply, incorrect. Federal law requires the election for the 2nd Congressional District to be held (and thus all votes cast in it to be counted) as part of the regularly scheduled November election. The state has no legitimate (much less substantial) interest in misleading voters with

pronouncements contrary to federal law. Thus, even if the Court were to find that the burdens were not severe and were subject to a less searching level of scrutiny than that applied when a law imposes a severe burden on voters, the challenged actions and provisions would continue to violate the First and Fourteenth Amendments.

**C.    Plaintiffs will suffer irreparable harm in the absence of an injunction.**

Plaintiffs will unquestionably suffer imminent and irreparable harm in the absence of injunctive relief. *See Jones*, 947 F.3d at 1104–05. Plaintiffs are irreparably harmed when they lack an "adequate remedy at law," including when their injuries cannot be "undone through monetary remedies." *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987). Here, the harm that will be done to Plaintiffs is, without question, irreparable. "Once the election occurs, there can be no do-over and no redress." *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014); *see also Peer v. Lewis*, No. 06-60146-CIV, 2008 WL 2047978, at *10 (S.D. Fla. May 13, 2008) (concluding "as a matter of law, [ ] an individual cannot recover damages for a lost election" and collecting cases to that effect), *aff'd*, No. 08-13465, 2009 WL 323104 (11th Cir. Feb. 10, 2009); *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2010).

Absentee and in-person early voting has already begun in Minnesota, *see* Minn. Stat. § 203B.081(1), and the 2nd Congressional District race appears on the general election ballot. However, given the Secretary's public statement that he will hold a special election in February for the 2nd Congressional District—and more specifically that votes cast for that office in the general election "will not be counted"—some number of voters who would otherwise cast their ballot for Representative Craig will not vote, because they

will believe it is pointless. Craig Decl. ¶¶ 7, 11–12. But if Plaintiffs later succeed on the merits of their challenge to the Postponement Provisions, as is likely, *see* Section IV(B), no special election will occur in February. An injunction is necessary to ensure that Representative Craig is not irreparably harmed by the loss of votes that otherwise would have been cast for her (and for the voters with whom she associates, by the loss of their opportunity to cast their ballots), but for the Secretary's actions. Craig Decl. ¶¶ 11–14.

In addition, unless an injunction is quickly granted, because of the uncertainty that has been caused by the Secretary's announcement of his intention to enforce the Postponement Provisions, Representative Craig will be further irreparably harmed by having to limit certain campaign efforts, just weeks before the general election, in order to conserve resources and/or raise additional funds for a potential special election in February 2021. *Id.* ¶¶ 5, 8–9. That is because the Postponement Provisions will force Representative Craig to campaign three months longer than she must under federal law. *Id. Compare* 2 U.S.C. § 7 (setting the date of the November 2020 general election as November 3, 2020) *with* Minn. Stat. §§ 204B.13(2)(c), (7) (setting the date of the special election as February 9, 2021). Representative Craig has raised funds and budgeted with the expectation of campaigning through November 3, 2020, the date of the general election. Craig Decl. ¶ 5. Without an injunction, Representative Craig will be forced to keep campaign resources in reserve and/or raise additional funds, limiting her ability to reach undecided voters before November 3. *Id.* ¶¶ 5, 8–9. These are not monetary expenses that may be remedied with a money judgment—the opportunity to spend the money in connection with her election is itself a separate, and equally irreparable, harm.

Ms. Davies will also suffer irreparable harm by the enforcement of the Postponement Provisions. Unless those Provisions are enjoined, the vote Ms. Davies has already cast for the 2nd Congressional District race will be meaningless because it will not count. Davies Decl. ¶¶ 4–6. This is a clear violation of the First and Fourteenth Amendments, as the Supreme Court has "repeatedly recognized that all qualified voters have a constitutionally protected right to vote . . . and to have their votes counted." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964) (citations omitted). The Eighth Circuit has further recognized that "[i]f [Plaintiffs' allegations that their First Amendment rights have been violated] are correct . . . [such a violation] constitutes an irreparable harm." *Marcus v. Iowa Public Television*, 97 F.3d 1137, 1140–41 (8th Cir. 1996) (citation omitted). Indeed, "[c]ourts routinely deem restrictions on fundamental voting rights irreparable injury." *League of Women Voters of N. Carolina*, 769 F.3d at 247 (citations omitted). Ms. Davies will also be harmed if, as a result of the unlawful Postponement Provisions, she remains unrepresented in the U.S. Congress until February 2021, when the state intends to hold its special election.

In short, both Plaintiffs will suffer irreparable harm in the absence of injunctive relief. This factor weighs strongly in Plaintiffs' favor.

### D.    The balance of equities tips decisively in Plaintiffs' favor.

The balance of equities tips decisively in Plaintiffs' favor. This part of the analysis "involves assessing the harm the movant would suffer absent an injunction, as well as the harm other interested parties would experience if the injunction issued." *Mainstream*

16

*Fashions Franchising, Inc. v. All These Things, LLC*, 19-CV-02953-(SRN/TNL), 2020 WL 1812501, at *26 (D. Minn. Apr. 9, 2020) (quotations and citations omitted).

Here, as Representative Craig and Ms. Davies have explained above, they would suffer significant and irreparable harms absent an injunction. So, too, would countless Minnesota voters who reside in, and have a right to vote in and have their ballots counted in, the race for the 2nd Congressional District in the November general election. On the other side of the scale, the Secretary will not suffer any corresponding harm if an injunction issues because he has no interest in enforcing an unlawful or unconstitutional statute. *Hispanic Interest Coal. of Alabama v. Governor of Alabama*, 691 F.3d 1236, 1249 (11th Cir. 2012) (holding that "[the State] has no interest in enforcing a state law that is unconstitutional"). Further, an injunction would require no work on the part of the Secretary because the election would proceed as planned and, if Representative Craig were ultimately unsuccessful in her legal challenge, the Secretary would have ample time to inform voters regarding the need to cast a new ballot in a February special election. The Secretary is not harmed if voters vote for a candidate for the 2nd Congressional District, among other races on the ballot, during the general election.

### E.    The public interest strongly favors an injunction.

Finally, the public interest strongly favors entering an injunction. "[I]t is always in the public interest to protect constitutional rights." *Rodgers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019). The public interest is particularly served by issuing an injunction in a case where voting rights are at issue because "[t]he public has a 'strong interest in exercising the fundamental political right to vote.'" *League of Women Voters of N. Carolina*, 769 F.3d

at 248. "That interest is best served by favoring enfranchisement and ensuring that qualified voters' exercise of their right to vote is successful." *Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219, 244 (6th Cir. 2011); *Husted*, 697 F.3d at 437 ("The public interest . . . favors permitting as many qualified voters to vote as possible."). Without an injunction, many voters in the 2nd Congressional District will likely rely on the Secretary's public statement that their votes will not count and will choose not to vote for a Congressional representative in the general election, instead waiting for a special election that may never materialize. Those voters will thus be entirely deprived of their right to vote for the 2nd Congressional District in the absence of Plaintiffs' requested relief.

## V.    Conclusion

For the foregoing reasons, Plaintiffs respectfully request declaratory and injunctive relief that enjoins the Secretary, his respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them from (1) enforcing the Postponement Provisions as applied to the 2nd Congressional District race in the November general election, (2) refusing to give legal effect to the ballots cast in that race in the November general election, and (3) impeding the right of Minnesota's voters to vote in that race in the November general election by making postings or other communications to voters indicating that their ballots will not be counted.

Dated:  September 29, 2020

LOCKRIDGE GRINDAL NAUEN P.L.L.P.


s/Charles N. Nauen
Charles N. Nauen (#121216)
David J. Zoll (#0330681)
Rachel A. Kitze Collins (#0396555)
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Tel:    (612) 339-6900
Fax:    (612) 339-0981
cnnauen@locklaw.com
djzoll@locklaw.com
rakitzecollins@locklaw.com


PERKINS COIE LLP

Marc Erik Elias (*pro hac vice* pending)
Joel J. Ramirez (*pro hac vice* pending)
700 Thirteenth Street NW, Suite 800
Washington, DC 20005-3960
Telephone:  202.654.6200
Facsimile:  202.654.6211
MElias@perkinscoie.com
JoelRamirez@perkinscoie.com

Kevin J. Hamilton (*pro hac vice* pending)
Holly M. Simpkins (*pro hac vice* pending)
Laura C. Hill (*pro hac vice* pending)
Nitika Arora (*pro hac vice* pending)
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
KHamilton@perkinscoie.com
HSimpkins@perkinscoie.com
LHill@perkinscoie.com
NArora@perkinscoie.com

*Attorneys for Plaintiffs*