# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 20-3126

———————————————

Angela Craig; Jenny Winslow Davies,

*Plaintiffs - Appellees*,

v.

Steve Simon, in his official capacity as Minnesota Secretary of State,

*Defendant - Appellee*,

Tyler Kistner,

*Intervenor Defendant - Appellant*.

------------------------------

U.S. House of Representatives,

*Amicus Curiae in Support of Appellees*.

———————

Appeal from United States District Court
for the District of Minnesota

———————

Submitted: November 13, 2020
Filed: November 20, 2020
[Published]

———————

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.

———————

PER CURIAM.

This is an appeal of a preliminary injunction entered by the district court[1] in a dispute relating to the general election held on November 3, 2020.  The appellant, Tyler Kistner, is the candidate of the Republican Party for the United States House of Representatives in the Second Congressional District of Minnesota.  Appellee Angela Craig is the incumbent Representative and the candidate of the Democratic-Farmer-Labor Party for that office.  Appellee Jenny Winslow Davies is a voter in the district.

The dispute arises from the death of a third candidate in the race, Adam Charles Weeks, on September 21, 2020.  Weeks was the candidate of the Legal Marijuana Now Party, which is recognized as a "major political party" under Minnesota law. Minnesota law accords "major" party status to the LMN Party because the party's candidate for state auditor received at least five percent of the statewide vote in 2018. *See* Minn. Stat. § 200.02, subd. 7(a)(1).

The lawsuit concerns the validity of a Minnesota statute that addresses the administration of an election when a candidate of a "major political party" dies after the seventy-ninth day before the general election.  As applicable here, the statute provides that "the general election ballot shall remain unchanged, but the county and state canvassing boards must not certify the vote totals for that office from the general election, and the office must be filled at a special election held in accordance with this section." Minn. Stat. § 204B.13, subd. 2(c).  The section continues that the governor "shall issue a writ calling for a special election to be conducted on the second Tuesday in February of the year following the year the vacancy in nomination occurred"—in this case, February 9, 2021.  *Id.* § 204B.13, subd. 7.

---

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota.

Appellate Case: 20-3126   Page: 2   Date Filed: 11/20/2020 Entry ID: 4977662

Craig maintains that the Minnesota statute is preempted by federal law.  The Constitution provides that Congress may regulate the time of elections for Representatives, U.S. Const. art. I, § 4, cl. 1, and this Elections Clause confers "the power to pre-empt."  *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 14 (2013).  States have responsibility "for the mechanics of congressional elections, but only so far as Congress declines to preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997) (internal citation omitted).

A federal statute provides that the day for election of Representatives is "[t]he Tuesday next after the 1st Monday in November, in every even numbered year."  2 U.S.C. § 7.  Another section authorizes the States to prescribe "the time for holding elections in any State . . . for a Representative . . . *to fill a vacancy*, whether such vacancy is *caused by a failure to elect at the time prescribed by law*, or by the death, resignation, or incapacity of a person elected."   *Id*. § 8(a) (emphases added).

The crux of the dispute is whether Minnesota has authority to forego the election for Representative on November 3, 2020, and schedule a special election for February 2021 "to fill a vacancy" that will be "caused by a failure to elect at the time prescribed by law," that is, on November 3.  Kistner maintains that because Minn. Stat. § 204B.13 provides that the canvassing boards must not certify the vote totals from November 3 in light of candidate Weeks's death, there will be a "failure to elect" a Representative "at the time prescribed by law," and the State may thus prescribe the time for an election to fill the vacancy.[2]

---

[2]The Minnesota Secretary of State, the official named as a defendant and subject to the district court's injunction, declined to file a brief in this appeal.  As Minnesota law provides that the Minnesota Attorney General "shall appear for the state in all causes in the . . . federal courts wherein the state is directly interested," Minn. Stat. § 8.01, we invited the attorney general to file a brief expressing the views of the State of Minnesota.  The attorney general also declined to file a brief.

Appellate Case: 20-3126     Page: 3     Date Filed: 11/20/2020 Entry ID: 4977662

The district court ruled that the Minnesota statute is likely preempted, ordered that § 204B.13 must not be enforced as to the election on November 3 for Representative from the Second District, and enjoined the Minnesota Secretary of State from refusing to give legal effect to the ballots cast for Representative on November 3. (The court also enjoined the Secretary of State from communicating to voters that their ballots would not be counted.) The district court reasoned that the State "cannot *invent* a failure to elect or *create* an exigent circumstance by refusing to certify the vote totals for Minnesota's Second Congressional District." The court rejected the State's position that a failure to elect will arise from candidate Weeks's death, and concluded that "the death of a candidate, without more, does not inevitably result in a failure to elect a representative." The court allowed, however, that if "Weeks were to posthumously win the November 3, 2020 general election, it is possible that a 'failure to elect' will have occurred."

After the completion of voting on November 3, the Minnesota Secretary of State announced unofficial results of the balloting for United States Representative in the Second District as follows: Angela Craig: 204,031 (48.18%); Tyler Kistner: 194,466 (45.92%); Adam Charles Weeks: 24,693 (5.83%). *See* Fed. R. Evid. 201.

In determining whether a preliminary injunction is warranted, a district court considers four factors: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). The likelihood of success on the merits is "[t]he most important of the *Dataphase* factors." *Shrink Mo. Gov't PAC v. Adams*, 151 F.3d 763, 764 (8th Cir. 1998). We review the district court's factual findings for clear error, its legal

-4-

conclusions *de novo*, and the ultimate decision to grant the injunction for abuse of discretion. *McKinney ex rel. NLRB v. S. Bakeries, LLC*, 786 F.3d 1119, 1122 (8th Cir. 2015).

Applying those standards, we uphold the district court's order granting a preliminary injunction. On likelihood of success, we agree with the district court that the Minnesota statute is likely preempted by federal law. Federal law establishes a uniform date for congressional elections. 2 U.S.C. § 7. We need not resolve whether "failure to elect" in § 8(a) is a term of art that is limited to failures arising from the balloting on election day, such as a tie vote or a vote in which no candidate earns a majority in a State that requires it. *See Foster*, 522 U.S. at 71 & n.3; Cong. Globe, 42d Cong., 2d Sess. 677 (1872) (remarks of Sen. Thurman). Even assuming for the sake of analysis that federal law permits a State to cancel an election and thereby to produce a "failure to elect" in certain extraordinary situations, we think federal law would allow that course only in truly "exigent" circumstances, as suggested by *Busbee v. Smith*, 549 F. Supp. 494, 525 (D.D.C. 1982), *aff'd*, 459 U.S. 1166 (1983).

For the reasons set forth in our decision denying a stay pending appeal, *Craig v. Simon*, 978 F.3d 1043 (8th Cir. 2020), we conclude that the death of candidate Weeks is likely not the sort of exigent circumstance that permits the State to refrain from holding the election for United States Representative on the date prescribed by federal law. Nor do the unofficial results announced by the Secretary of State suggest that the balloting on November 3 failed to elect a Representative.

We see no error in the district court's determination that Craig and Davies would suffer irreparable harm without an injunction, as they would be left without representation in the House of Representatives between the end of the incumbent's term in January 2021 and the seating of a new Representative after a special election

-5-

in February 2021.   The balance of harms and the public interest do not militate against an injunction, especially when there is a likelihood of success on the merits of the complaint.   Accordingly, the district court's order of October 9, 2020, is affirmed.[3]

_____

_____

[3]Paula Overby's motion for leave to intervene on appeal, filed after expedited briefing was completed, is denied as untimely.  *See also Richardson v. Flores*, No. 20-50774, 2020 WL 6636352, at *1-3 (5th Cir. Nov. 12, 2020) (providing that intervention on appeal should be allowed only "in an exceptional case for imperative reasons").